No. 21-1319

_____

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

BUNTHOEUN KONG,
**PLAINTIFF - APPELLANT**,

v.

UNITED STATES,
**DEFENDANT - APPELLEE.**

_____

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

_____

## BRIEF OF *AMICUS CURIAE*
## AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS,
## INC. IN SUPPORT OF PLAINTIFF-APPELLANT AND
## REVERSAL OF THE JUDGMENT BELOW

_____

Adriana Lafaille
  (1st Cir. No. 1150582)
Rebecca R. Krumholz
  (1st Cir. No. 1197950)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
617-482-3170 x 308
alafaille@aclum.org

Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. v

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................. 1

INTEREST OF *AMICUS CURIAE* .......................................................... 4

ARGUMENT .......................................................................................... 4

   I.   Mr. Kong raised colorable claims about the legality of his
      detention............................................................................................. 4

  II.  Section 1252(g) does not deprive this Court of jurisdiction over
      Mr. Kong's claims............................................................................ 8

      A.  Challenges to the lawfulness of detention fall outside
          the scope of § 1252(g). ......................................................... 10

      B.  Section 1252(g) does not bar review of challenges to the
          manner of executing a removal order. .................................. 15

      C.  Section 1252(g) does not apply where the execution of a
          removal order is not yet possible. ........................................ 18

      D.  Section 1252(g) applies to challenges to the
          government's discretionary decision to execute removal
          orders, not to legal questions regarding the scope of
          ICE's authority. .................................................................... 20

CONCLUSION ...................................................................................... 23

CERTIFICATE OF COMPLIANCE........................................................ 24

CERTIFICATE OF SERVICE................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. U.S. Immigr. & Customs Enf't,*
  510 F.3d 1 (1st Cir. 2007) ....................................................... 11

*Alvarez v. U.S. Immigr. & Customs Enf't,*
  818 F.3d 1194 (11th Cir. 2016) ..................................... 11, 18

*Arevalo v. Ashcroft,*
  344 F.3d 1 (1st Cir. 2003) ....................................................... 21

*Bowrin v. U.S. INS,*
  194 F.3d 483 (4th Cir. 1999) ................................................. 21

*Bridges v. Wixon,*
  326 U.S. 135 (1945) .................................................................... 7

*Camarena v. Dir., Immigr. & Customs Enf't,*
  988 F.3d 1268 (11th Cir. 2021) ........................................... 21

*Chhoeun v. Marin,*
  442 F. Supp. 3d 1233 (C.D. Cal. 2020) ............................. 6, 8

*Clark v. Martinez,*
  543 U.S. 371 (2005) ................................................................. 14

*Demore v. Kim,*
  538 U.S. 510 (2003) ............................................. 7, 9, 11, 14

*Devitri v. Cronen,*
  289 F. Supp. 3d 287 (D. Mass. 2018) ............................... 16

*E.F.L. v. Prim,*
  986 F.3d 959 (7th Cir. 2021) ................................................ 21

*El Badrawi v. Dep't of Homeland Sec.,*
  579 F. Supp. 2d 249 (D. Conn. 2008) .......................... 12, 17

*Foucha v. Louisiana,*
  504 U.S. 71 (1992) ................................................................. 5, 7

*Garcia v. U.S. Att'y Gen.,*
  533 F.3d 724 (3d Cir. 2009) ................................................. 21

*Gonzalez-Fuentes v. Molina,*
  607 F.3d 864 (1st Cir. 2010) .................................................. 6

*Hamama v. Adducci,*
  912 F.3d 869 (6th Cir. 2018) ................................................ 11

*INS v. St. Cyr,*
  533 U.S. 289 (2001) ............................................................ 9, 13

*Jackson v. Indiana*,
406 U.S. 715 (1972) ...................................................... 7

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) ..................................................... 22

*Jama v. INS*,
329 F.3d 630 (8th Cir. 2003) ....................................... 22

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ................................................ 9, 11

*Madu v. U.S. Att'y Gen.*,
470 F.3d 1362 (11th Cir. 2021) ................................... 11

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) ...................................... 11

*Pensamiento v. McDonald*,
315 F. Supp. 3d 684 (D. Mass. 2018) ......................... 11

*Reno v. American-Arab Anti-Discrimination Committee*,
525 U.S. 472 (1999) ............................................. passim

*Silva v. United States*,
866 F.3d 938 (8th Cir. 2017) ...................................... 21

*Sissoko v. Rocha*,
509 F.3d 947 (9th Cir. 2007) ...................................... 12

*Tazu v. Att'y Gen.*,
975 F.3d 292 (3d Cir. 2020) .................................... 15, 18

*Viana v. President of the United States*,
No. 18-cv-222-LM, 2018 WL 1587474 (D.N.H. Apr. 2, 2018) ............. 13

*Wong v. United States*,
373 F.3d 952 (9th Cir. 2004) ..................................... 9,19

*Wong Wing v. United States*,
163 U.S. 228 (1896) ..................................................... 6

*You v. Nielsen*,
321 F. Supp. 3d 451 (S.D.N.Y. 2018) ................... 17, 21, 22

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ............................................. *passim*

## Statutes

8 U.S.C. § 1252(g) ............................................. *passim*

28 U.S.C. § 2680 ............................................................ 8

## Other Authorities

H.R. Rep. No. 109-72, 2005 WL 1848528 (2005) (Conf. Rep.) ............... 13

Real ID Act of 2005, Pub. L. 109-13 (May 11, 2005) .............................. 12

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 26.1, the *amicus curiae* certifies that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case involves the government's claim that it has unreviewable authority to take any action it wants when it pursues the execution of a longstanding removal order. The district court evidently agreed, dismissing on jurisdictional grounds a Federal Tort Claims Act case brought by Bunthoeun Kong to challenge the legality of his 2018 immigration detention. But Mr. Kong's abrupt detention raised serious constitutional concerns, and the jurisdictional statute at issue, 8 U.S.C. § 1252(g), did not bar review of his unlawful detention claim.

Mr. Kong is a Cambodian national who immigrated to the United States as a small child in 1982. In 1996, he lost his lawful status due to a criminal conviction and was ordered removed from the United States. Because the United States did not have a repatriation agreement with Cambodia, the government released Mr. Kong on an order of supervision in 2000. For the next 18 years, Mr. Kong regularly reported to immigration authorities and complied with the conditions of his release. He worked, married, and had three children. A.002; R.003-05.

In 2018, after the Cambodian government began facilitating the repatriation of more of its nationals, Immigration and Customs

Enforcement abruptly detained Mr. Kong. ICE's purpose was to present him for an interview with Cambodian officials in the United States who could decide whether to issue the travel document that ICE needed to execute his removal order. A.002-04; R.005-07.

After ICE agreed to release him from detention and the immigration court granted his motion to reopen his removal case, Mr. Kong filed this action under the FTCA and the Massachusetts Civil Rights Act, stating claims for false arrest, false imprisonment and violations of his civil rights in connection with his 2018 detention. The government moved to dismiss, arguing that steps taken to seek approval to repatriate noncitizens are "decision[s] or action[s]" to "execute removal orders" and thus barred from judicial review under 8 U.S.C. § 1252(g). The district court adopted this position and dismissed Mr. Kong's claims for lack of subject matter jurisdiction.

Mr. Kong's challenge to his abrupt detention—which occurred without any apparent individual determination or reason to believe that he would not voluntarily appear for an interview—raised colorable legal claims. The Constitution permits detention only in limited circumstances and with adequate procedural protections.

The district court did not reach these claims because it broadly applied § 1252(g) to bar its review. But § 1252(g) has been narrowly interpreted to apply only to challenges to the government's exercise of prosecutorial discretion. *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 472, 485 n.9, 487 (1999). It does not apply to Mr. Kong's claims for four reasons. First, Mr. Kong's claim is a challenge to the legality of his detention, and Courts have repeatedly declined to apply § 1252(g) in detention cases. Second, although § 1252(g) protects the government's exercise of discretion to execute a removal order, it does not insulate from review the *manner* in which ICE exercises its discretion. Third, § 1252(g)'s protection for actions to "execute removal orders" does not apply where removal is not yet possible. Fourth, as several circuits have concluded, § 1252(g) does not bar consideration of legal questions about the statutory and constitutional bounds of ICE's authority. Because the district court had jurisdiction over Mr. Kong's unlawful detention claims, this Court should reverse its decision dismissing his case.

# INTEREST OF *AMICUS CURIAE*[1]

The American Civil Liberties Union of Massachusetts (ACLUM) is a state affiliate of the national American Civil Liberties Union and is dedicated to protecting and advancing the civil rights and civil liberties of all residents of the Commonwealth. ACLUM represents noncitizens in individual and class action litigation challenging unlawful government conduct and has an interest in preserving noncitizens' access to the federal courts.

## ARGUMENT

### I. Mr. Kong raised colorable claims about the legality of his detention.

Mr. Kong's claim of unlawful detention—while not before this Court on its merits—is a serious one. Mr. Kong was detained so he could attend a *meeting*. But post-order custody is permissible only where reasonably related to the purposes of protecting the community from harm or ensuring a noncitizen's presence for removal, and only

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. Only amicus, its members or its counsel contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(5)(E).

where accompanied by adequate procedural protections. *See Zadvydas v. Davis*, 533 U.S. 678, 690-94 (2001); *see also Foucha v. Louisiana*, 504 U.S. 71, 78-80 (1992).

Mr. Kong's abrupt detention came after nearly two decades of compliance with his order of supervision, during which he appeared at every appointment as instructed. Despite that compliance, in 2018, ICE unimaginatively decided that Mr. Kong and other similarly situated Cambodians should be categorically detained so that each could attend a single, pre-scheduled, meeting with Cambodian officials. There is no indication that ICE even considered whether Mr. Kong would attend on his own if instructed to do so, much less conducted any individualized review regarding the need for his detention. ICE simply arrested Mr. Kong early one morning as he drove to work and held him for weeks in order to present him for his meeting and await its results. *See* A.002-04.

Mr. Kong's challenge to this unnecessary detention finds support in the Supreme Court's recognition of the constitutional limits on the executive's detention authority. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and

including those "subject to a final order of deportation." *Zadvydas*, 533

U.S. at 693-94 (citing *Wong Wing v. United States*, 163 U.S. 228, 238

(1896)). And "[f]reedom from imprisonment—from government custody,

detention, or other forms of physical restraint—lies at the heart of the

liberty that Clause protects." *Id.* at 690; *see also Gonzalez-Fuentes v.

Molina*, 607 F.3d 864, 886 (1st Cir. 2010) ("[A]n individual already

enjoying certain forms of conditional release has a protected liberty

interest in retaining them."); *Chhoeun v. Marin*, 442 F. Supp. 3d 1233,

1245 (C.D. Cal. 2020) (post-order noncitizens facing the threat of

detention have due process rights, including after a motion to reopen is

denied).

Outside the context of criminal punishment, due process permits

detention only "in certain special and narrow nonpunitive

circumstances . . . where a special justification . . . outweighs the

individual's constitutionally protected interest in avoiding physical

restraint." *Zadvydas*, 533 U.S. at 690 (citation and quotation omitted).[2]

---

[2] This is true regardless of whether ICE is executing a removal warrant.
Although the district court relied on the existence of a warrant, A.013-
14, that warrant also has no bearing on this Court's jurisdiction. That
noncitizens with removal orders are issued warrants does not render
their detention lawful or provide a reason to eliminate judicial review.

Such special justification is present only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Zadvydas*, 533 U.S. at 690; *Foucha*, 504 U.S. at 79. In the context of post-order detention, these purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community" during ICE's efforts to procure removal. *Zadvydas*, 533 U.S. at 690. Detention is unconstitutional unless it serves these aims. *See id.* at 690-91.

These substantive limitations on permissible detention are closely intertwined with procedural due process protections. *See Foucha*, 504 U.S. at 78-80. Where Congress has left detention determinations to the judgment of executive officials, noncitizens are entitled to adequate procedures to determine whether a reasonable relationship between their detention and its purposes exists in each case.[3] *See id.* at 79; *Zadvydas*, 533 U.S. 692; *see also Bridges v. Wixon,* 326 U.S. 135, 154

---

[3] *Cf. Demore v. Kim*, 538 U.S. 510, 514 n.3, 521-23, 529 (2003) (upholding constitutionality of "narrow" mandatory detention statute, where Congress had made judgment that category of noncitizens with certain criminal convictions should be detained for brief period during immigration removal proceedings, and where individualized procedure was available for noncitizens to contest whether they were properly subject to statute); *id.* at 531-32 (Kennedy, J., concurring).

(1945) ("Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."); *Chhoeun*, 442 F. Supp. 3d at 1247 (holding due process required notice prior to detention of Cambodians with longstanding orders of removal because abrupt detention without notice "create[s] a high risk of erroneous deprivation").[4] Because ICE never made any individual determination that detaining Mr. Kong was actually justified, and because Mr. Kong's devout adherence to his terms of supervision over the course of eighteen years suggest it was not, his detention—at a minimum—raised serious constitutional concerns.[5]

## II. Section 1252(g) does not deprive this Court of jurisdiction over Mr. Kong's claims.

Section 1252(g) does not apply to Mr. Kong's claim that he was unlawfully detained. That section provides:

(g) **Exclusive jurisdiction.** Except as provided in this section and notwithstanding any other provision of law (statutory or

---

[4] Even a dissent in *Zadvydas* recognized the importance of procedural protections for post-order detainees. *See* 533 U.S. at 721 (Kennedy, J., dissenting) (acknowledging post-order detention could not be arbitrary and capricious, and must be accompanied by adequate procedures to determine danger and flight risk).

[5] In addition to demonstrating that his detention was unlawful, Mr. Kong must still satisfy other requirements of the FTCA. *See, e.g.*, 28 U.S.C. § 2680 (exceptions to FTCA liability).

nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The Supreme Court held in *Reno v. AADC* that § 1252(g) is a "narrow" provision "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." 525 U.S. at 485 n.9, 487. It forecloses judicial review only of the "three discrete actions" delineated in the statute: the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482. Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions." *Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018) (plurality) (characterizing Court's interpretation of § 1252(g) in *AADC*); *see also Demore v. Kim*, 538 U.S. 510, 537 (2003) (O'Connor, J., concurring in part).[6]

---

[6] Courts must narrowly construe jurisdiction-stripping statutes. *See INS v. St.* Cyr, 533 U.S. 289, 298 (2001); *Wong v. United States*, 373 F.3d 952, 963-64 (9th Cir. 2004). Thus, "when confronted with capacious phrases like 'arising from,'" courts "eschew[] uncritical literalism leading to results that no sensible person could have intended." *Jennings*, 138 U.S. at 840 (plurality) (internal quotations omitted).

The district court's conclusion that § 1252(g) precluded Mr. Kong's FTCA challenge to the legality of his detention expanded the reach of this jurisdictional bar. Section 1252(g) does not apply because it does not bar challenges to the lawfulness of detention; because it does not insulate from review the execution of a removal order by any possible means, including with violence; because executing Mr. Kong's removal order was not even possible at the time he was detained; and because Mr. Kong does not challenge ICE's *exercise* of its discretion, but rather raises legal questions about the limits of ICE's authority.

## A. Challenges to the lawfulness of detention fall outside the scope of § 1252(g).

Section 1252(g) does not bar Mr. Kong's challenge to the lawfulness of his post-order detention. Detention-related claims fall outside the constraints of § 1252(g) because an agency's decision to detain someone is distinct from its discretionary decision to execute removal. Moreover, the legislative history of § 1252(g) indicates that Congress intended to preserve jurisdiction over challenges to detention, and interpreting § 1252(g) to bar such challenges would run afoul of the canon of constitutional avoidance. Because Mr. Kong's claim rests solely on the legality of his detention itself—and he does not challenge and

indeed acknowledges ICE's authority to execute his removal order, *see* Kong Br. at 12, 16—the district court had jurisdiction over his claim.

Courts routinely exercise jurisdiction over unlawful detention claims notwithstanding § 1252(g) because detaining a noncitizen is distinct from deciding "to commence proceedings, adjudicate cases, or execute removal orders." *See Zadvydas*, 533 U.S. at 687-88 (§ 1252(g) does not interfere with the court's longstanding authority to review detention claims, including challenges to "the extent of the Attorney General's authority under the post-removal-period detention statute"); *Jennings*, 138 S. Ct. at 840-41 (plurality); *Demore*, 538 U.S. at 537 (O'Connor, J., concurring in part);[7] *see also Aguilar v. U.S. Immigr. &*

---

[7] *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Despite these jurisdiction-stripping provisions, the district court may still review habeas challenges to unlawful immigration detention."); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2021) (§ 1252(g) did not divest district court of jurisdiction where petitioner brought constitutional challenge to his detention, rather than to Executive's exercise of discretion); *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018) (following ICE detention of large numbers of Iraqis with final orders of removal, holding § 1252(g) applied to claims seeking stays of removal but did not apply to detention claims, even though detention was a consequence of ICE's decision to execute longstanding removal orders); *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1204-05 (11th Cir. 2016) (§ 1252(g) does not bar claims that challenge detention after 90-day removal period); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (noting that § 1252(g) does not foreclose review

*Customs Enf't*, 510 F.3d 1, 11 (1st Cir. 2007) ("[W]e have held that district courts retain jurisdiction over challenges to the legality of detention in the immigration context."). Because "DHS's decisions to arrest and detain" Mr. Kong were "separate and discrete" from the agency's decision to execute his removal order, § 1252(g) does not apply. *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 266 (D. Conn. 2008) (challenge to issuance of Notice to Appear targeted the decision to "commence removal proceedings" and was barred by § 1252(g), while challenges to initial arrest and detention were not).[8]

The legislative history of § 1252(g) supports this interpretation. In 2005, Congress revised 1252(g) to add language that explicitly applied its jurisdictional limitations to habeas cases.[9] This change ensured that discretionary decisions to commence proceedings, adjudicate cases, or

_____

of claims "concern[ing] detention while the administrative process lasts").

[8] The court in *El Badrawi* appropriately distinguished *Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007) because that decision involved an expedited removal statute that mandated detention. *See* 579 F. Supp. 2d at 266 ("arrest and detention" in *Sissoko* "necessarily flowed from the government's decision to initiate removal proceedings").

[9] Specifically, the Real ID Act of 2005 added to § 1252(g) the language, "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title." Pub. L. 109-13, Sec. 106(a)(3) (May 11, 2005).

execute removal orders would be unreviewable, even in a petition for writ of habeas corpus. H.R. Rep. No. 109-72, at 176, 2005 WL 1848528 (2005) (Conf. Rep.). But the 2005 amendments were expressly intended to preserve "habeas review over challenges to detention that are independent of challenges to removal orders." *Id.*[10]

This interpretation is also supported by the canon of constitutional avoidance. Interpreting § 1252(g) to bar claims of unlawful post-order detention in habeas petitions by detained immigrants would raise severe concerns under the Suspension Clause, and § 1252(g) can easily be interpreted to avoid these concerns by allowing challenges to detention where, as here, a noncitizen does not attack the execution of the removal order itself. *See Zadvydas*, 533 U.S. at 690, 696-97; *St. Cyr*, 533 U.S. at 300, 314.[11]

---

[10] Prior to jurisdiction-channeling provisions adopted in 1996 and 2005, noncitizens who were in custody for habeas purposes frequently obtained judicial review of their orders of removal through petitions for writ of habeas corpus. *See, e.g.*, *St. Cyr*, 533 U.S. at 293.

[11] *Viana v. President of the United States*, No. 18-cv-222-LM, 2018 WL 1587474 (D.N.H. Apr. 2, 2018), which the district court cited, underscores the distinction between traditional detention claims like Mr. Kong's and challenges to removal that may be barred by § 1252(g). Although the district court compared this case to Mr. Viana's effort to gain "time to 'pursue various avenues for relief from removal,'" A.012 (quoting *Viana*, 2018 WL 1587474, at *1), they have little in common.

Although Mr. Kong is pursuing his claims of unlawful detention in an FTCA action rather than a habeas petition, that does not broaden the scope of § 1252(g). To the contrary, § 1252(g)'s text explicitly applies its restrictions to habeas petitions in the *same* manner as every other claim.[12] The plain language of the statute articulates uniform limitations on jurisdiction "notwithstanding any other provision of law . . . including section 2241 of Title 28, or any other habeas corpus provision." 8 U.S.C. § 1252(g).

Nor does this case involve a challenge to the kind of "brief door-to-plane detention" that in certain circumstances may implicate § 1252(g).

---

Mr. Kong does not argue that his removal should have been delayed, only that his detention was unlawful.

[12] While the Suspension Clause does not itself protect Mr. Kong's ability to bring an FTCA claim, constitutional avoidance supports interpreting § 1252(g) to permit jurisdiction over his detention-based claims precisely because the text of § 1252(g) cannot be interpreted differently depending on whether a detention challenge is brought in a habeas or FTCA case. *See Clark v. Martinez*, 543 U.S. 371, 382 (2005) (statutory interpretation adopted to avoid constitutional concerns also applies in context not raising these concerns; contrary view would "render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case"); *see also Demore*, 538 U.S. at 537 (O'Connor, J., concurring in part) ("Nowhere in *AADC* did the Court suggest, however, that [§ 1252(g)'s] jurisdictional limits might not apply depending on the particular grounds raised by an alien for challenging the Attorney General's decisions or actions in these three areas.").

*See Tazu v. Att'y Gen.*, 975 F.3d 292, 298-99 (3d Cir. 2020) (involving

noncitizen detained for removal after ICE secured his travel document).

In such a case—where a brief deprivation of liberty is directly linked to

the goal of securing removal—courts might be concerned that removal,

not detention, is the real object of a lawsuit. But while even a "door-to-

plane" detention would be better disposed of on the merits than by

stretching § 1252(g) into the detention realm, Mr. Kong's detention for

the purpose of seeking a travel document bears little resemblance. Mr.

Kong's claims raise pure and discrete challenges to the legality of his

detention and are not an indirect attack on removal itself. Section

1252(g) does not apply.

## B. Section 1252(g) does not bar review of challenges to the manner of executing a removal order.

Mr. Kong's challenge to his detention is also not subject to

§ 1252(g)'s jurisdictional bar because it relates to the *manner* in which

the government attempted to execute his removal order, not ICE's

"discretionary determination[]" to do so. *See AADC*, 525 U.S. at 485. As

the Supreme Court explained in *AADC*, § 1252(g) is "designed to give

some measure of protection to 'no deferred action' decisions.'" *Id.* at 485,

485 n.9. The three specific steps addressed in § 1252(g)—the

commencement of proceedings, adjudication, and the execution of removal orders—had often been at issue in challenges to the "exercise of prosecutorial discretion" before § 1252(g)'s enactment. *Id.* at 485 n.9.

The manner of executing a removal order, including whether ICE detains a noncitizen prior to an interview, is distinct from the discretionary decision to decline a favorable exercise of prosecutorial discretion. Mr. Kong's detention was not required by any removal statute or otherwise necessary to his removal. Instead, the decision to detain him was, at most, a determination regarding the manner in which ICE wanted to pursue his removal. *Cf. Devitri v. Cronen*, 289 F. Supp. 3d 287, 291 (D. Mass. 2018) (illustrating ICE's decision to execute an order of removal without detention, by requiring noncitizens to depart the country in sixty days).

But interpreting § 1252(g) to shield the manner of executing a removal order yields absurd and dangerous consequences that Congress could not have intended. If the district court's view were adopted, ICE could board noncitizens on their removal flights by violently dragging them, knocking them unconscious, or forcibly drugging them. And it could face no consequences because all of these things would be part of

its execution of a removal order.[13] Likewise, the government would have unreviewable authority to "execute removal by dropping Petitioner on a life raft in the middle of the Atlantic Ocean" or "to use a less far-fetched example . . . indefinitely detain [a noncitizen] . . . for the purposes of executing a final order of removal." *You v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018). But while government officials are protected in the exercise of discretion regarding whether to execute a removal order, "they cannot do so in any manner they please." *Id.*[14] Because nothing in § 1252(g) indicates any Congressional intent to create sweeping immunity from review of the manner in which a removal order is executed, the provision does not bar review of Mr. Kong's claims.

---

[13] *See* Associated Press, *Two Immigrants Claim Abuse*, PRESS-TELEGRAM (May 9, 2007, 12:00 AM) (updated Sept. 1, 2017, 9:33 AM) (describing forcible drugging of noncitizens scheduled for deportation, including noncitizen who stated that agents "grabbed his arms and legs, pushed him onto a bench, pulled down his pants and injected him in the buttocks").

[14] *See also El Badrawi*, 579 F. Supp. 2d at 270 (rejecting argument that detention of noncitizen with voluntary departure was constitutional for sole reason that his removal was reasonably foreseeable, because such a "position amounts to an argument that the government may constitutionally detain someone, for no legitimate reason whatsoever, simply because the government has given indications that the detention will end in the (near) future").

## C.    Section 1252(g) does not apply where the execution of a removal order is not yet possible.

Even if § 1252(g) could reach challenges to unlawful post-order custody and to the manner of executing a removal order generally, Mr. Kong's claim also falls outside § 1252(g) for the additional reason that the government could not yet execute his removal order at the time of the challenged detention. Section 1252(g) shields the government's exercise of discretion to execute a removal order. But where the government lacks the ability to execute that order, it cannot make a "decision or action" to "execute" it or exercise the discretion protected by § 1252(g). *See Alvarez*, 818 F.3d at 1204-05 (§ 1252(g) did not apply where officials allegedly knew removal was impossible, because they could make no "decision" to execute removal); *Wong*, 373 F.3d at 965 (§ 1252(g) does not cover actions preceding a decision to commence proceedings or to execute a removal order).[15]

The government argued below that steps taken to seek approval to repatriate noncitizens are part of executing a removal order under

---

[15] The "execution" of a removal order connotes the "performance or completion" of removal, *Tazu*, 975 F.3d at 296, 298 (citing Execute, Black's Law Dictionary (11th ed. 2019)), which is impossible absent an agreement to repatriate.

§ 1252(g). R.020-21. The district court went even further by describing the completion of a questionnaire, before the government even reinitiated the process of requesting a travel document for Mr. Kong, as "undoubtedly a step in the process of executing his removal order." A.008.

That view strips § 1252(g) of the careful limits drawn in *AADC*. Under the district court's view, detention may be unreviewable under § 1252(g) whenever the government is taking nominal steps to obtain travel documents, even where there is no certainty—let alone a reasonable possibility—that removal will become viable. For example, while the government reportedly had an 80-95% success rate in obtaining Cambodian travel documents following an interview, A.008 n.10, the district court's view would also bar jurisdiction over ICE's detention of noncitizens being presented at interviews at which they had only an 8% chance of obtaining a travel document. Such a rule would permit the government to escape review of *Zadvydas* claims so long as detention could be said to be in service of fruitless applications for third-country travel documents. Alternatively, if courts attempted to draw distinctions based on the likelihood of removal, they would

intractably entangle jurisdictional questions with the strength of a noncitizen's claim on the merits.

Mr. Kong's removal had not been possible for nearly two decades and was still not possible when he was detained without travel documents. Because the government lacked the ability to execute his removal order when it detained him for an interview, his challenge to detention did not arise from the execution of that order and is not barred by § 1252(g).

### D. Section 1252(g) only applies to challenges to the government's discretionary decision to execute removal orders, not to legal questions regarding the scope of ICE's authority.

Finally, § 1252(g) does not apply because Mr. Kong does not challenge ICE's exercise of its discretion, but instead asserts that the scope of ICE's authority is limited by the Constitution. If this Court reaches the issue of whether § 1252(g) permits review of such legal claims—which it need not do in this case—it should adopt the position of circuits that have held that § 1252(g) does not apply to legal questions that do not challenge the executive's exercise of discretion.

Consistent with the Supreme Court's instruction that § 1252(g) should be read narrowly as a "discretion-protecting provision," *AADC*,

525 U.S. at 487, several circuits "limit[] the statute's jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders." *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018).[16] Whether ICE's conduct "[is] legal is not a question of discretion." *You,* 321 F. Supp. 3d at 457; *see also Arevalo v. Ashcroft*, 344 F.3d 1, 10 (1st Cir. 2003) (review of issues that were "pure questions of law" and not matters of discretion was not barred by separate provision of § 1252).

---

[16] *See also Garcia v. U.S. Att'y Gen.*, 533 F.3d 724, 729 (3d Cir. 2009) (holding § 1252(g)'s jurisdictional bar does not apply when the petitioner "is not challenging the discretionary decision to commence proceedings, but is challenging the government's very authority to commence those proceedings") (emphasis in original); *Bowrin v. U.S. INS*, 194 F.3d 483, 488 (4th Cir. 1999) ("§ 1252(g) stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to exercise her discretion to initiate or prosecute these specific stages in the deportation process."); *but see Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021) ("Section 1252(g) bars review over 'any' challenge to the execution of a removal order" including a challenge to the legal authority to execute it, but does not preclude challenges to the underlying legal basis of removal including validity or existence of the order), *petition for cert. filed*, No. 20-1791 (U.S. June 23, 2021); *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021); *Silva v. United States*, 866 F.3d 938 (8th Cir. 2017).

When courts are asked to answer legal questions about the application of a statute or Constitutional provision, there is no danger that judicial review will lead to "judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Thus, § 1252(g) is best interpreted not to reach legal claims that challenge the constitutionality of ICE's conduct, even when that conduct occurred as a consequence of the government's decision to execute a removal order. *See You,* 321 F. Supp. 3d at 456 (§ 1252(g) does not apply "when the legal question is whether the way [ICE] acted accords with the Constitution and the laws of this country").

Because Mr. Kong's claims of unlawful arrest and detention raise legal question about constitutional bounds of ICE's authority to arrest and detain him, § 1252(g) does not apply. Mr. Kong alleges ICE violated his constitutional rights when he was arrested and detained for purposes of an interview without any individualized consideration of whether his detention was justified. Mr. Kong is "not objecting to an unfavorable discretionary decision or action to execute the removal order." *Jama v. INS,* 329 F.3d 630, (8th Cir. 2003), aff'd sub nom. *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 632 (2005). In fact, Mr. Kong

acknowledges that ICE "wielded unreviewable discretion in determining when to resume its efforts to remove him to Cambodia" and that it had "legitimate discretionary authority to take lawful steps to effect Kong's removal" including requiring him to attend the consular interview. Kong Br. at 12, 16. Mr. Kong's legal claims do not go to ICE's exercise of discretion in executing his removal order, but rather seek to enforce the mandatory constitutional constraints on ICE's detention authority. They are therefore not barred by § 1252(g).

## CONCLUSION

For the foregoing reasons, the Court should vacate the decision of the district court and remand the case for further proceedings.

Date: July 9, 2021                    Respectfully submitted,

/s/ Adriana Lafaille
Adriana Lafaille
  (1st Cir. No. 1150582)
Rebecca R. Krumholz
  (1st Cir. No. 1197950)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
617-482-3170 x 308
alafaille@aclum.org

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because, excluding parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 4,964 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with Century Schoolbook in 14-point type.

Dated: July 9, 2021                    /s/ Adriana Lafaille
                                       Adriana Lafaille

**CERTIFICATE OF SERVICE**

I certify that the foregoing is being filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

Dated: July 9, 2021

/s/ Adriana Lafaille
Adriana Lafaille